338 So.2d 1011 (1976)
Eddie K. GOODWIN et al.
v.
BENEFICIAL FINANCE COMPANY of Alabama, a corp.
SC 1663.
Supreme Court of Alabama.
October 1, 1976.
Rehearing Denied November 5, 1976.
Jerry O. Lorant, Reid B. Barnes, Jr., Birmingham, for appellants.
L. Murray Alley, William A. Robinson, Birmingham, for appellee.
SHORES, Justice.
This is an appeal by the plaintiffs from a judgment granting a motion for summary judgment in favor of the defendant.
The plaintiffs entered into loan transactions with the defendant, which issued to the plaintiffs disclosure statements. Plaintiffs contend that such statements fail to comply with the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 226.1 et seq., in that it:
1) Failed to disclose the "cash proceeds of the loan,"
2) Failed to disclose the credit terms in meaningful sequence, and
3) Failed to disclose the credit terms in the proper conspicuous style and size.
We have carefully examined Beneficial's disclosure statement and disagree with the trial court that it complies with the requirements of law.
*1012 Under the provisions of 15 U.S.C. § 1639(a):
"Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open and consumer credit plan shall disclose each of the following items, to the extent applicable:
"(1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.
"(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.
"(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2))." (Emphasis Supplied)
We agree with the opinion of the United States Court of Appeals in Pollock v. General Finance Corp., 535 F.2d 295, 298 (5th Cir. 1976), that:
"These three subsections of § 1639(a) clearly require the disclosure of three different items. A creditor must disclose (1) the amount of cash given to the debtor or given on the debtor's behalf, (2) the charges, individually itemized, and (3) the total of the above two amounts. . ."
The act passed by the Congress clearly requires that lenders disclose to the borrowers the amount of credit of which the obligor will have the actual use. The regulation promulgated by the Board of Governors of the Federal Reserve System, known as Regulation Z is less clear. However, we agree with the Fifth Circuit that that regulation must be read in light of the statute, which clearly requires separate disclosure of the amount borrowed. Regulation Z, § 226.8(d), provides:
". . . the following items, as applicable, shall be disclosed:
"(1) The amount of credit . . . which will be paid to the customer or for his account or to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term `amount financed.'"
To be consistent with the act of Congress, this regulation should be read to require the following disclosures:
(1) The amount of credit which will be paid to the customer or for his account. . . .;
(2) All charges, individually itemized, which are included in the amount of credit extended, but not a part of the finance charge; and
(3) The total of these amounts, which shall be designated "the amount financed."
In the instant case, the lender has disclosed only part of the first item and the last two items. The disclosure statement itemizes all charges made, i.e., $48.24 for disability insurance, $32.16 life insurance, and $7.55 filing fees. The amount financed is shown to be $1308.62. At no place on the form is the debtor informed of what the actual amount of the "credit of which the obligor will have the actual use" is (paid to another on his behalf, item 1). This amount can be calculated by adding the net balance of the prior loan, $394.40, plus the itemized charges listed above, and subtracting that total from the amount financed, $1308.62. These calculations reveal that the debtor has a credit of $826.27 of which "he will have the actual use."
In the Pollock case, the statement informed the debtor that the total amount financed was $171.36, but did not disclose that the amount of the loan was $155.28. Even though one of the amounts listed on the statement was $155.28, without a description of what the amount was, the Fifth Circuit said:
". . . Although the debtor could have determined the amount of the loan by the simple arithmetic procedure of subtracting the total insurance charges from the total amount financed, we determine *1013 that the statute does not require a consumer to perform this function, and that the creditor's failure to disclose the required item violated § 1639(a)(1)." (535 F.2d at 299)
The same result is compelled in this case; and we therefore reverse the judgment of the trial court.
Additionally, the United States Court of Appeals, in Allen v. Beneficial Finance Co. of Gary, Inc., 531 F.2d 797 (7th Cir. 1976), had before it the exact disclosure form involved in this case. The statement in that case did, however, unlike the present one, disclose the amount of the cash or check delivered to the borrowers. Nevertheless, that court held that the disclosure statement failed to meet the standards of the Truth in Lending Act, because the figures were not set out in a meaningful sequence, required by Regulation Z, 12 C.F.R. § 226.1, et seq.
The amount paid out to the borrowers in that case was shown in the box on the right side of the form, last entry. In the instant case, it is not set out at any place on the form. The court, in Allen, said, speaking to the "meaningful sequence" requirement:
" . . . For instance, in the amount financed column, one would expect to find the sum paid out to the borrowers at the top, and, in the case of refinancing a loan, the amount of the prior loan also near the top. These are the principal elements of the amount borrowed and the borrower would expect to find these terms in a prominent position. . . ." (531 F.2d at 802)
The court, in Allen, thought the form failed to meet the disclosure requirements because the items, although included, were not presented in a meaningful sequence. At the very least, the items must be shown somewhere on the form, and the amount loaned is nowhere shown on the form before us.
We are mindful that Allen has been appealed; but even if the Supreme Court of the United States disagrees with the Seventh Circuit that the "meaningful sequence" requirement has been met, it would leave open the question of whether the amount actually loaned must be shown at some place on the form.
REVERSED AND REMANDED.
FAULKNER, JONES, ALMON, EMBRY and BEATTY, JJ., concur.
HEFLIN, C.J., and BLOODWORTH and MADDOX, JJ., dissent.
MADDOX, Justice (dissenting).
I have carefully compared Beneficial's disclosure statements involving both plaintiffs, Eddie Goodwin and Hattie Cunningham (Appendix A),[*] with the sample form recommended by the Federal Reserve Board (See "What You Ought To Know About Federal Reserve Regulation Z" at 26), appended as Appendix B,* and I believe that Beneficial's form is substantially similar to the one that is recommended by the Federal Reserve.
In comparing Beneficial's disclosure statement with the sample form, I find on the sample form, the information is arranged horizontally on the page in two separate columns. On Beneficial's form, the information is basically arranged in two vertical columns. The only major difference is that on Beneficial's form, the item "ANNUAL PERCENTAGE RATE" is placed at the end of the second column. I do not think that placement of this item at the end of the column is prohibited. All of the information required to be disclosed as shown by the sample form is contained on Beneficial's form. I also note that the sample form specifically points out that "it is not the only format which will permit a creditor to comply with disclosure requirements of Regulation Z."
The majority, in effect, holds that Regulation Z, promulgated by the branch of the federal government charged with administering the Truth in Lending Act, is inconsistent with the Act. First, I do not believe that it is, and second, I believe that the *1014 majority fails to recognize that weight should be given to the regulations, because of the Act's penalty provisions. The Supreme Court of the United States, in Mourning v. Family Publications Service, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973):
"Relying on American Broadcasting, respondent contends that the Truth in Lending Act must be construed narrowly since it contains penal provisions, and that a narrow interpretation requires that the Board's rule be nullified. We cannot agree, however, that every section of an act establishing a broad regulatory scheme must be construed as a `penal' provision, as that term is used in American Broadcasting, merely because two sections of the Act provide for civil and criminal penalties. Penal statutes are construed narrowly to insure that no individual is convicted unless `a fair warning [has first been] given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.' McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931). Where, as here, the language of the challenged rule is explicit, that risk is not present. See Kraus & Bros., Inc. v. United States, 327 U.S. 614, 621-622, 66 S.Ct. 705, 707-708, 90 L.Ed. 894 (1946)." 411 U.S. at 375, 93 S.Ct. at 1663, 36 L.Ed.2d at 333.
Admittedly, the Supreme Court of the United States has held that the Truth in Lending Act is not construed as narrowly as a criminal statute providing a graver penalty, such as a prison term, but the Court, in Mourning, set out the standard to be applied:
". . . We have noted above that the objective sought in delegating rulemaking authority to an agency is to relieve Congress of the impossible burden of drafting a code explicitly covering every conceivable future problem. Congress cannot then be required to tailor civil penalty provisions so as to deal precisely with each step which the agency thereafter finds necessary. In light of the emphasis Congress placed on agency rulemaking and on private and administrative enforcement of the Act, we cannot conclude that Congress intended those who failed to comply with regulations to be subject to no penalty or to criminal penalties alone. . ." [Emphasis added.] 411 U.S. at 376, 93 S.Ct. at 1664, 36 L.Ed.2d at 333-334.
When the majority requires Beneficial to prepare a disclosure form containing more information than the rulemaking agency requires, I believe it falls into grievous error, even though in doing so it follows two Federal Circuit Court of Appeals opinions [Pollock v. General Finance Corp., 535 F.2d 295 (5th Cir. 1976) and Allen v. Beneficial Finance Company of Gary, Inc., 531 F.2d 797 (7th Cir. 1976)]. I think Pollock and Allen were incorrectly decided.
In Pollock, the court did hold, as the majority holds, that the principal amount borrowed should be disclosed. It is interesting, however, that the court noted as follows:
"We observe that the Office of Saver and Consumer Affairs of the Federal Reserve System has issued an opinion letter to General Finance stating that it did `not consider the basic amount of loan proceeds to be a "charge" within the meaning of § 226.8(d)(1) and thus [did] not believe that this amount must be individually described under that section.'" 535 F.2d 298 fn. 3.
It is obvious that the Pollock court refused to follow the interpretation of the law made by the administrative body charged with its enforcement. Furthermore, the court admitted that Judge O'Kelley, in Mullinax v. Aetna Finance Co., CA 19124 (N.D.Ga. July 25, 1975) ("cash proceeds" need not be included) had correctly interpreted Regulation Z. The court said:
"We tend to agree that Judge O'Kelley's interpretation of Regulation Z, § 226.8(d)(1) is more consonant with the literal language of the regulation than is the interpretation made by the district judge in this case. Nevertheless, we affirm the district court's finding of a disclosure *1015 violation because the regulation must be read in light of the statute which requires separate disclosure of the amount borrowed. Under 15 U.S.C. § 1639(a) a creditor is required to `disclose each of the following items, to the extent applicable.'
"(1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.
"(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.
"(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).
"These three subsections of § 1639(a) clearly require the disclosure of three different items. A creditor must disclose (1) the amount of cash given to the debtor or given on the debtor's behalf, (2) the charges, individually itemized, and (3) the total of the above two amounts." [Emphasis added.]
I believe the Fifth Circuit erred in finding that Congress required that "cash proceeds" must be disclosed. In fact, the Pollock opinion I have quoted from shows that the Fifth Circuit failed to recognize that "amount of credit" is not the same as "amount of cash." Pollock is wrong. It is a judicial interpretation at odds with Regulation Z and the interpretations made by the administrative agency charged with enforcement of the Truth in Lending Act.
In reaching the conclusion that Pollock and Allen are wrong, I have been guided by the statement of the judiciary's role in such cases which is contained in Philbeck v. Timmers Chevrolet, Inc., 499 F.2d 971, 976, 977 (5th Cir. 1974):
"[The Court] deal[s] primarily with four sources of law and interpretation: The Truth in Lending Act itself; Regulation Z, which was promulgated by the [Federal Reserve] Board pursuant to the broad powers granted it under section 105 of the Act; the Federal Reserve Board Interpretations of Regulation Z . . .; and the Federal Reserve Board staff opinions, which explain the provisions of the three foregoing authorities, usually in answer to a query regarding a particular factual situation. The three latter authorities, though not binding on the Court, are entitled to great weight, for they constitute part of the body of `informed experience and judgment of the agency to whom Congress delegated appropriate authority". . . . We are not free to substitute our `own discretion for that of administrative officers who have kept within the bounds of their administrative powers.' . . .' Furthermore, the construction which the Federal Reserve Board gives its own Regulation Z in its Interpretations and staff opinions is especially entitled to great deference `because of the important interpretive and enforcement powers granted this agency by Congress' in this highly technical field. [Citations omitted]." [Emphasis added.]
I have also examined a letter by Jerauld C. Kluckman, Assistant Director, Federal Reserve Board, wherein he stated that there is no requirement to list "cash proceeds" on the form. See FRB Letter No. 982, December 24,1975, Reprinted in 4 CCH CONSUMER CREDIT GUIDE ¶ 31,321.
In Evans v. Household Finance Corp., Civ.No. 72-46-D (S.D.Iowa Mar. 29, 1973), CONSUMER CREDIT GUIDE ¶ 99,007 at 88,780, followed by the Circuit Court here, the Federal District Judge noted that the sample disclosure form made no requirement that "cash proceeds" be disclosed. The trial court here followed Evans and specifically found that "it is not the function of this court to determine whether a creditor's disclosure statement is the best imaginable; the creditor is not to be held to any such artificial, subjective standard as that." I agree, especially in view of the fact that a penalty can be imposed, and the lender has followed substantially a form suggested by the Federal Reserve Board.
It is fundamentally unfair for Congress to grant to the Federal Reserve Board the power to promulgate a regulation, such as *1016 Regulation Z, containing a sample form, and have a lending agency be penalized, even though it substantially complies with the sample form.
HEFLIN, C.J., and BLOODWORTH, J., concur.
NOTES
[*] Appendices "A" and "B" are incapable of legible reproduction.